**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **ROSA PEREZ MONTALVO, JUSTO VAZQUEZ APONTE; AND THE VAZQUEZ-PEREZ CONJUGAL PARTNERSHIP**<br><br>Plaintiff<br><br>V.<br><br>**PLAZA CAROLINA MALL, L.P.,** *d/b/a* Plaza Carolina**;** unknown **CORPORATION AND/OR ENTITY A-D;**<br><br>Defendant | **CIVIL NO.**<br><br>**TORT CLAIM FOR DAMAGES; NEGLIGENCE UNDER 31 L.P.R.A. $5141/5142**<br><br>**TRIAL BY JURY DEMANDED** |

## COMPLAINT

**APPEAR NOW** Plaintiffs, **ROSA PEREZ MONTALVO, JUSTO VAZQUEZ APONTE AND THE VAZQUEZ-PEREZ CONJUGAL PARTNERSHIP**, through the undersigned attorney, and hereby state, allege and request as follows:

## INTRODUCTION:

This is a civil action resulting from a slip and fall injury sustained by plaintiff, Rosa Pérez Montalvo (hereinafter, "Rosa" or "Plaintiff") on or about September 25th, 2019, while she was walking with her husband through Plaza Carolina's Food Court corridor.

As the case progresses, it will be proven that defendants failed to maintain the food Court corridor's[1] floor in a suitable safe condition and good repair for Plaintiff's safety. It will be further proven that defendants failed to provide warnings and/or failed to provide adequate warning signs and supervision within the applicable standard and caselaw regarding the potential risk of slipping and falling on such dangerous conditions. Plaintiffs' claims damages against Plaza Carolina and

---

[1] "pathway", "walkway", "path", "hallway", among others synonyms will be used interchangeably all along the Complaint.

any other entity jointly and severally liable for the control, conservation, maintenance, preparation and good repair of the Mall's floors as they failed to adequately warn Plaintiff about the slippery and/or wet floors.

All commercial establishments are bound by a heightened duty of care imposed by law towards their invitees such as Plaintiffs and, unless proven otherwise, they are responsible for the control, conservation, maintenance, preparation and good repair of the slippery and wet floors on its premises which supposed a dangerous condition and safety hazard for Plaintiff. As such, defendants acted contrary to the applicable standards, regulations and policies regulating such industry.

In other words, the evidence will show defendants failed to reasonably alert Plaintiff through adequate and conspicuous wet floor signs or any other reasonable manner, so that all passersby could notice the **wet and/or slippery conditions of the floor in question which supposed a dangerous condition**. The Mall neglected their own heightened duty of care towards all their invitees, such as Plaintiff to warn and foresee hazardous conditions and prevent accidents such as the one that Rosa suffered.

Such dangerous condition–without the proper guidance or warning sign— constitutes a known and preventable hazard to all passersby who frequently visit the area.  For that reason, defendants should be liable for all damages Plaintiffs suffered as they knew or should have known about this hazard.

Any controversy surfacing between defendants as to the *control* of said area, doesn't affect Plaintiffs *prima facie* case. Defendants know or should know, that keeping a wet/slippery floor where people are constantly passing through without the reasonable warnings and care promotes a hazardous condition for all passersby's safety.   Alerting the mall customers about the

dangerousness of the slippery/wet floor or redirecting them through signs to a safer path in the same premises –like a reasonable entity would have done— would promote a safer place to walk through the mall's food court preventing Plaintiff's injury.

## JURISDICTIONAL BASIS AND VENUE:

1. Jurisdiction in this case arises under 28 U.S.C. §1332, diversity jurisdiction.

2. Plaintiffs are citizens of the United States and domiciled in the state of Puerto Rico, while all Defendants are either individuals who are citizens and domiciled in the United States of America other than the state of Puerto Rico or corporations/entities domiciled, incorporated and/or with their principal place of business in the United States of America other than the state of Puerto Rico.

3. The matter in controversy exceeds the sum of **SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00)**, exclusive of interest and costs, thus vesting jurisdiction on this Honorable Court pursuant to 28 U.S.C. §1332.

4. Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. §1391 since the events or omissions giving rise to this claim occurred in this district.

## THE PARTIES

5. Plaintiff **ROSA PÉREZ MONTALVO** (hereinafter referred to as "**PLAINTIFF**" or "**ROSA**") is of legal age, married to co-plaintiff Justo Vázquez Aponte, citizen of the United States, domiciled in Puerto Rico.  Her address is: Villa Carolina 60-19, Blq. 60, Calle 46, Carolina, PR 00985.

6. Plaintiff **JUSTO VÁZQUEZ APONTE** (hereinafter referred to as "**PLAINTIFF**" or "**Mr. Vázquez**") is of legal age, married to plaintiff Rosa Perez Montalvo, citizen of the United

States, domiciled in Puerto Rico.  His address is: Villa Carolina 60-19, Blq. 60, Calle 46, Carolina, PR 00985.

7. Plaintiff the **VÁZQUEZ-PÉREZ CONJUGAL PARTNERSHIP** is the conjugal partnership comprised of Rosa Perez Montalvo and Justo Vázquez Aponte, which is a legal entity with its own personality, separate and distinct from the spouses that compose it.

8. Defendant **PLAZA CAROLINA, L.P., (**hereinafter referred to as "**defendant**" or "**PLAZA CAROLINA**") is a limited partnership organized under the laws of the State of Delaware, which legally owns, controls and operates Plaza Carolina Shopping Mall located in the Municipality of Carolina, Puerto Rico, that should respond fully for Plaintiff's damages as further explained below.  By information or belief their current address is: 225 West Washington Street, Indianapolis, Indiana 46204-3438.

9. Defendant **unknown CORPORATION AND/OR ENTITY A-D** are corporations or entities organized and existing under the laws of a state other than the state of Puerto Rico, and who may be therefore liable to Plaintiff, in whole or in part, jointly or severally, for the actions and/or omissions herein described and the damages suffered by Plaintiff on or about September 25th 2019, who are fictitiously named herein to be later replaced by their actual names if they become known through further discovery in this litigation.

## GENERAL ALLEGATIONS:

10. Rosa was a healthy 72-year-old married energetic woman, with no prior physical complications regarding her hips or knees.  She took pride of keeping up with the daily house chores like cleaning, cooking, among others and for maintaining a strong and lasting marriage for 50 years with Mr. Vázquez.

4

11. Rosa, before the injury that promotes this suit, walked efficiently on her own, went to church every Thursday, Saturday and Sunday, enjoyed walking as a means of exercise and liked to travel to San Juan and Fajardo during the weekends, among other things a 72-year-old healthy woman could do.

12. Rosa, before the injury that triggers this suit, was able to take care of her most basic personal needs, to mention a few, like cooking, walking to the bathroom, showering, washing her cloth, shopping, sweeping, mopping and walking freely. Now, due to the injury, nothing of that is possible or done with extreme difficulty, pain and suffering.

13. The devastating fall Rosa endured has limited her ability to do the things she once loved. As a consequence, her devastating injury has generated a dependent, depressing and detrimental way of life.

14. On or about September 25, 2019, Rosa was walking alongside her husband, Mr. Vázquez, heading to her doctor's office located inside Plaza Carolina.

15. It was customary for them, after their visit to Rosa's primary physician, to get something for lunch in the Food Court.

16. Unbeknownst to Plaintiffs, is the fact that before her devastating injury that same day, some sort of an incident transpired involving human excrements scattered around the floor which required mopping and the use of substances to clean and sanitize the floors located in the Food Court of Plaza Carolina.

17. The defendants negligently and in total disregard for all of the visitor's safety, after they had cleaned and sanitize the affected area, failed to provide and/or didn't provide adequate warning signs to alert passersby of the potential wet/slippery conditions of the floor, in order to forewarn Rosa and others alike from walking through such dangerous condition to prevent injuries.

18. Defendants did not take the necessary precautions, such as placing warning signs in the food court's passageway *in front* or *right before* where the mopping and sanitization cleaning had occurred. Instead, defendants allowed Plaintiffs to access the hallway freely without any warning whatsoever about the potential slippery or wetness of the floors.

19. Defendants simply failed to implement their prevention policy or didn't have a sufficient prevention policy and training by not putting up signs to forewarn the guests of the danger ahead.

20. On top of that, defendants did not provide Rosa nor any of the visitors with any alternate safer access points to walk through.

21. Defendants took away Plaintiffs right to know the conditions of the floor prior to deciding to continue walking through the corridor.

22. Since no warnings, precautions or else was adequately signaled by defendants, Rosa never suspected of any hazardous wet or slippery condition would be present along the corridor she was walking.

23. The space was fully open, without any visible warning signs. Otherwise, Rosa, as a cautious person, would have taken an alternate route.

24. Because of defendant's failure to reasonably warn Rosa about the dangerous slippery and/or wet conditions of the floor, she kept on walking with her husband unsuspecting any danger at all.

25. Rosa and Mr. Vázquez never suspected any apparent danger that may have been reasonably discovered to protect themselves while they were walking along the food court's corridor like visible warning signs in front of them. Otherwise, they would have changed direction to avoid the potential danger ahead.

26. Consequently, while she was walking with Mr. Vázquez, all of a sudden, without prior notice, she slipped and fell abruptly to the floor.

27. During the devastating fall, Rosa was in excruciating pain.  She was yelling and only could find some sort of comfort praying aloud while lying on the floor.

28. Rosa could not get up; her pain was agonizing and unbearable.   While lying on the floor, Rosa's hands where touching the floor when she noticed the floor had –what she perceived was— some sort of an oily substance.

29. She even spotted a maintenance employee who never told her anything about the slippery or wet conditions of the floor. In addition, Mr. Vazquez took a video of the incident and, it was through the lens of the video, that both Plaintiffs noticed after the fact a cone-type warning sign placed away in a corner from where she had slipped and fell.

30. Rosa was upset, as she would've taken a different rout if that cone or more of them, would've been adequately placed in front of her forewarning of the danger ahead.  The area where they were walking was very open and spacious and no warning sign was identified.

31. Thereafter, the police and emergency personnel arrived at the scene.  At all times she was still laying on the floor until the paramedics arrived.

32. When the paramedics arrived, she was placed in a stretcher, carried outside, and taken by ambulance to the "Hospital Del Maestro".  She was taken x-rays and spent the whole day in the hospital.

33. On October 8th, 2019, Rosa was admitted to the Hospital Del Maestro to perform surgery on her right knee to repair her fractured kneecap (patella) among other things.   She was administered spinal anesthesia and, thereafter, the surgery was performed by Dr. Raul Roura. After the surgery, she was stitched 20 times and later released from the hospital.

34. As a result of the fall, Rosa was: 1) placed at least 2 different casts in two different occasions for sixteen (16) days each time; 2) a surgical boot was placed for 13 days;  3) confined to a wheelchair sporadically when she tried to go outside; 4) taken 15 physical therapies in the facility "Rehabilitacion y Medicina Deportiva"; 5) taken 13 aquatic therapies for 2 hours straight in AquaMed, Aquatic Therapy and Rehab Center; and, 6) so far taken 2 phycological therapies for her mental recovery.

35. As a consequence, her movements are very limited.  She gets easily tired of being seated or standing in the same position for short periods of time.

36. Rosa tried to cope her suffering and mental anguishes leaning to her faith and Bible.  But that proved it wasn't enough.  Rosa sought out counseling from a phycologist, Dr. Juan Figueroa, as she was feeling depressed, anxious and panicking due to the devastating and dreadful fall and coping with her new way of life.

37. Rosa managed to have two sessions with her phycologist, on February 20 and March 10, 2020, before the COVID pandemic hit, which, needless to say, halted her subsequent sessions up to this date.

38. Rosa used sporadically the wheelchair and more often the walker to move around, and nowadays uses a cane around the house constantly.

39. As a result of the fall Rosa, slept many days in the sofa alone located in the living room to be closer to the kitchen and bathroom. About 6 months later, her entire bed was moved to the living room for the same purpose which to this day is still there.

40. As a result of the fall, Rosa needed constant care and assistance.  For approximately 24 days straight, until mid-October of 2019, Mr. Vázquez a 75-year-old man, had no other option but to stop working to take proper care of Rosa.

41. Thereafter, with scarce money to spend, Plaintiffs had to retain the services of two nurses to constantly take care of Rosa from Monday to Friday, beginning on or before October 14 until December 30th, 2019.  The nurses are witnesses to all of Rosa's and Mr. Vazquez's sufferings, anguish and damages alleged herein.

42. Saturdays and Sundays Mr. Vázquez took on the tasks the nurses performed during the week and continues to do so currently.

43. Plaintiff paid $80.00 per day, from 12pm to 10pm for almost 3 months to cover the nurse's expenses.  The nurses helped Rosa bath, do the daily chores, wash her cloth, change her, change sheets on her bed, among other things.

44. Entering 2020, Plaintiff's son and goddaughter moved to their house and substituting the tasks and labor the nurses performed until the end of 2019.  Their son and goddaughter are also witnesses to all of Rosa's and Mr. Vázquez's sufferings, anguish and damages alleged herein.

45. Mr. Vázquez had to adjust his job hours to make time for the errands.

46. Before the fall, Mr. Vázquez ate breakfast and lunch prepared by Rosa, and took a meal prepared by Rosa to eat later in the afternoon during his job break. That way they reduced significantly their yearly expenses.

47. But now, as a result of the fall, Mr. Vázquez has to spend almost $20 per day for breakfast and lunch since Rosa no longer can prepare food as she loved to do.

48. During the process of recovery Rosa began to feel depressed because, among other things, she was scared her leg wouldn't be the same again aesthetically and functionally.  She was only sleeping 1 or 2 hours at nights for the first couple of months after the fall, when she could sleep all through the night prior to the fall. To this day she can't sleep all through the night as she used to do before.

49. Rosa, as mentioned before, is also depressed due to her inability to get around and take care of herself.  She had no other option but to rely on other people to take care of her, do the chores, shop, and take her to the doctor's appointments.

50. For Rosa, trying to get around her home with a walker and now a cane is very difficult.  Just doing every-day personal hygiene care like taking a shower, a bath or washing her hair is a difficult task.

51. This nightmare has cause Rosa to cry many days and nights feeling helpless and not being able to care for her wellbeing.

52. The injuries have affected the level of energy, enthusiasm and mobility that she previously brought to her friends, family, and most important of all, to herself.

53. It has been almost **1 year** since the fall on September 25th, 2019, and Rosa continues to suffer, taking physical therapies, using a walker and being fully dependent of others among other things mentioned further ahead.

54. She is desperate, among other things, to get back to her normal lifestyle doing what she loved the most.

55. She is still recuperating from this shocking experience that have led her to an emotional toll and doesn't know if she will ever recuperate fully.

56. Also, Mr. Vázquez has suffered emotional and mental anguish including, but not limited to, this horrendous and dreadful incident his wife endured. He has suffered by her side the whole incident from, the sight of seeing Rosa yelling and crying for help laying in the floor, the desperation of not knowing what had happened to her, the trip to the hospital, readjusting his work schedule, the ongoing recuperation period by her side and not knowing if she will ever recuperate fully.

## FIRST CAUSE OF ACTION:
## Negligence under 31 L.P.R.A. §5141 and/or 31 L.P.R.A §5142.

57. All the factual allegations contained above are restated herein in full.

58. The Defendants, through their acts or omissions, caused damage to Plaintiff through fault or negligence in violation of 31 L.P.R.A. §5141 and/or 31 L.P.R.A §5142.

59. Pursuant to the foregoing articles, defendants respond jointly and severally for the damages related herein due to their negligent and culpable actions and omissions, and/or negligent actions and omissions of their employees, agents, representatives or contractors.

60. As part of Plaza Carolina's business, guests are invited to come inside the commercial establishment to enjoy and conduct business, and while doing so, they are supposed to be provided with clean and safe atmosphere, safe access and safe location to the mall's amenities, all in a safe and secure environment.

61. Additionally, under Puerto Rico Law, commercial establishments are held to a stringent/heightened standard of care with respect to their guests, which requires malls to provide adequate security measures to assure the safety and security of its guests. As such, it became the duty of Plaza Carolina, its agents, subcontractors and/or servants on its behalf, to exercise all due care and caution for the safety and security of its guests while on its premises, and to hire employees and/or subcontractors, capable of insuring the safety and security of guests at the mall.

62. At all times herein mentioned, it was the duty of the Defendants, their agents, servants, and/or employees, to provide a suitable and reasonably safe pathway for guests to access the food court, which included supervising, placing adequate warning signs, and leading the guests through safe routes so as to avoid passing through the wet/slippery conditions of the floor, to reduce any potential injury.

63. Visitors, like Plaintiffs herein, are entitled to assume that proper care has been exercised to make the premises safe for them, and they're not required to be on the alert for possible defects. It's the duty of commercial establishments to exercise reasonable care to maintain those areas that are accessible to the public, so as to avoid injury to its patrons.

64. On or about September 25th, 2019, the Defendants, their agents, servants, and/or employees, failed to warn, alert and guide the guests through a safe and suitable pathway with good conditions and in good repair for the safety of their invitees.

65. On or about September 25th, 2019, the Defendants, their agents, servants and/or employees owned and/or operated Plaza Carolina.

66. On or about September 25th, 2019, the defendants, their agents, servants and/or employees managed and/or maintained Plaza Carolina.

67. On or about September 25, 2019, the Defendants, their agents, servants, and/or employees, failed to provide a suitable and reasonably safe pathway for not preventing foreseeable dangerous conditions such as: allowing guests to walk through a slippery/wet walkway without the proper and adequate warning signs which promoted potential injury to the mall-guests.

68. The Defendants, their agents, servants, and/or employees acted negligently, carelessly, and recklessly for not marking foreseeable dangerous conditions, failing to warn through suitable "warning signs" about the "wet/slippery conditions of the floor" so guests could be on notice of the danger ahead and take alternate routes to prevent potential injury.

69. The Defendants, their agents, servants, and/or employees acted negligently, carelessly, and recklessly by failing to eliminate a dangerous condition, I.e., **the wet/slippery floor**, thus, not conducting their business, in a reasonably safe and suitable manner in accordance with applicable safety regulations and standards of care.

70. On or about September 25th, 2019, the Defendants, their agents, servants and/or employees breached their duty towards Rosa and the mall's guests in accordance with the applicable standard of care and regulations, for failing to provide a suitable and reasonably safe walkway with "adequate warning sign" for the guests to notice the potential danger ahead; therefore, they are liable for the damages suffered by Rosa.

71. On or about September 25th 2019, the defendants, their agents, servants and/or employees inspected, cleaned and sanitized the area affected by human excrement, therefore, they knew that the area could potentially be still slippery or wet after conducting the sanitization which meant a dangerous condition to its patrons.

72. On or about September 25th 2019, the defendants, their agents, servants and/or employees had an insufficient prevention policy and/or failed to implement correctly their policy to remediate the dangerous condition the wet/slippery floor meant to all the guests, including Plaintiffs.

73. On or about September 25th 2019, the defendants, their agents, servants and/or employees had an insufficient prevention policy and/or failed to implement a sufficient prevention policy by not putting up signs *in front* to forewarn the guests, such as Plaintiff, of the slippery/wet floor right ahead.

74. On or about September 25th, 2019, Plaintiffs didn't know of any apparent danger or one that could've been reasonably discovered to protect themselves since the corridor they were walking through was clear of any visible and/or adequate warning signs that would've alerted them of any potential danger right ahead.

75. On or about September 25th, 2019, the Defendants, their agents, servants and/or employees breached their duty towards Plaintiffs by neglecting to place an adequate warning sign which

would've alerted of the potential danger ahead redirecting her towards a safer path other than the slippery/wet floor, with said breach of duty being the proximate cause of Plaintiff's injuries.

76. The Defendants, their agents, servants and/or employees failed to address foreseeable risks; the defendant had actual or constructive knowledge of the dangerous condition the slippery/wet floor meant to every guest walking through, without any warnings signs or instructions, or those provided being inadequate.

77. The fact that defendants had a warning sign displayed inadequately in a corner far away from the slippery floor, suggests the inadequacy of the warning and their actual or constructive knowledge of the hazardous or dangerous condition the wet/slippery floor meant to the patrons.

78. Defendants, their agents, servants and/or employees could have reasonably foreseen that the injuries or related harms of plaintiff would result from their omission to provide adequate warning signs, instructions and guidance to a safer route to walk through the food court's corridor.

79. Defendants, their agents, servants and/or employees failed to maintain the floor in a reasonably and safe condition, even more, when it is known that mall-guests expect that defendants take all the necessary security measures to avoid foreseeable risks and/or dangerous conditions, such as, in this case, placing adequate warning signs, providing instructions for alternate routes when a slippery/wet floor is present, to make the floor suitable for guests use.

80. Defendants, their agents, servants and/or employees incurred in fault and/or negligence for failing to warn about the dangerous condition the wet/slippery floor supposed to guests and others attending the mall's food court which ultimately caused plaintiffs incident, even though they knew or should have known of its existence, and prior knowledge of similar incidents.

81. Defendants, their agents, servants and/or employees knew or should have known the foreseeable risk and dangerous condition the uneven the wet/slippery floor meant to every guest.

82. Defendants, their agents, servants and/or employees omitted to place warning signs reasonably visible to the guests of the inherent dangerous situation the slippery/wet floor imposed to customers walking through the food court corridor, thus, they failed to adequately warn them making such omission the proximate cause of plaintiff's injuries.

83. Defendants knew or should have known that the absence of warning signs and/or the placement of inadequate warnings to alert of the slippery/wet floor conditions was extremely dangerous, as unsuspecting passengers walking through could suffer injuries from it.

84. As a direct result of the Defendants' negligent acts or omissions, Rosa, kept walking through the slippery/wet floor conditions, and suffered serious, detrimental, and limiting physical injuries as well as mental and emotional pain and suffering.

85. As a direct result of the Defendants' negligent acts or omissions, Mr. Vázquez, has suffered emotional pain and suffering while enduring all the struggles his wife has been dealing and continues to endure with in pain.

86. As a direct result of the Defendants' negligent acts or omissions, Rosa, has altered her lifestyle, and has suffered emotional pain and suffering, loss of income and economic damages.

## **DAMAGES:**

87. The factual allegations contained above are restated herein in full.

88. Plaintiffs have had to incur in medical expenses and will keep incurring in present and future medical expenses related to the treatment of her physical ailments.

89. Plaintiff is suffering from emotional hardship due to the uncertainty of her full recuperation, the constant fear of falling, and the ongoing effect on her inability to keep engaging in the recreational, social and daily activities to which she was accustomed.

90. As a direct result of the acts or omissions of Defendants, Rosa, has suffered damages in the form of physical and mental injuries, mental and emotional anguish, ongoing pain and suffering, loss of income and economic losses, due to the injury she suffered on or about September 25th, 2019.

91. As a direct result of Defendants' negligent acts or omissions, Rosa underwent surgery to repair her right knee's broken patella, due to the injury she suffered on or about September 25th, 2019.

92. As a direct result of Defendants' negligent acts or omissions, Rosa will have a permanent scar on her right knee for the rest of her life, due to the injury she suffered on or about September 25th, 2019.

93. As a direct result of Defendants' negligent acts or omissions, Rosa will require ongoing treatment on her right knee and her body as a whole through physical, mental, and aquatic therapies, due to the injury she suffered on or about September 25th, 2019.

94. As a direct result of Defendants negligent acts or omissions, Rosa, has been confined to a mostly sedentary, immobile lifestyle, due to the injury she suffered on or about September 25th, 2019.

95. As a direct result of Defendants negligent acts or omissions, during the last year Rosa has been placed *two casts, used a surgical boot, a wheelchair*, a *walker*, a *baton*, taken pain medications (*Percocet and tramadol*) and mental/physical/aquatic therapies to enhance her mental and physical function and prevent re-injury, due to the injury she suffered on or about September 25th, 2019.

96. As a direct result of Defendants negligent acts or omissions, Rosa's functional ability and daily activities have been affected, due to the injury she suffered on or about September 25th, 2019.

97. As a direct result of Defendants negligent acts or omissions, Rosa's hip has been hurting trying to protect her right knee from putting too much weight in it, due to the injury she suffered on or about September 25th, 2019.

98. As a direct result of Defendants negligent acts or omissions, Rosa's walking pace has been reduced significantly due to the constant hurt in the knee, hip and fear of falling, due to the injury she suffered on or about September 25th, 2019.

99. As a direct result of Defendants negligent acts or omissions, Rosa, feels a constant loose sensation in her right knee, due to the injury she suffered on or about September 25th, 2019.

100. As a direct result of Defendants negligent acts or omissions, Rosa, is using a baton on a daily basis and a walker to get in and out of the shower, due to the injury she suffered on or about September 25th, 2019.

101. As a direct result of Defendants' negligent acts or omissions, Rosa has, and will continue to experience, past and future physical and mental damages, related to but not limited to past and future treatments, medications, and therapies, due to the fall she suffered on or about September 25, 2019.

102. Besides of all the foregoing damages, the following list are examples of damages that will be proven; many of them are still ongoing and will continue to accrue:

    a. Knee brace.
    b. Immobilizer for 2 months. In other words, Rosa was kept on an immobilizer with the leg straight at all times for 60 days, 24 hours a day.
    c. Medical Insurance Lien on her private Medical Insurance payments for her surgery, recovery and ongoing treatment.
    d. Confined to showering with the walker, due to her fear of falling transitioning in and out of the shower.
    e. Continues to perform physical, mental and aquatic therapies.

    **f.**  Can stand only for short periods of time.
    **g.**  Cannot sweep or map the floors as she was accustomed to do and enjoyed.
    **h.**  Her right knee swells constantly after any outing.
    **i.**  Constant pain and swelling.
    **j.**  X rays, MRI's performed resulting in a fracture patella.
    **k.**  Restriction of moving around without the aid of someone.
    **l.**  Limited to a walker, wheelchair and currently a baton for the past year
    **m.**  Cannot do most of the things alone.  As an independent woman, she was accustomed to moving around the house alone.

103.   As a direct result of Defendants negligent acts or omissions, Rosa's involvement in her church, friends, social life, and community has been negatively affected, thus, resulting in an emotional toll for her.

104.   As a direct result of Defendant's negligent acts or omissions, Rosa has had to settle for the past year to a dependent, sedentary, inactive lifestyle, because of the injury she suffered on September 25th, 2019.

105.   Rosa's past and future physical damages, pain and ongoing suffering, past and future mental and emotional anguish and distress have a reasonable value of not less than two million five hundred thousand dollars ($2,500,000.00).

106.   Rosa's economic losses due to her out of pocket payments for medication, meals, physical therapies, medical liens, nurses, and the like have a reasonable value of not less than fifty thousand dollars ($50,000.00).

107.   Mr. Vazquez's past and future mental and emotional anguish and distress have a reasonable value of not less than one hundred seventy-five thousand dollars ($175,000.00).

108.   Defendants are jointly and severally liable for all damages.

## **TRIAL BY JURY DEMANDED**

109.   Plaintiff hereby demands a trial by jury.

**WHEREFORE,** Plaintiff demand judgment against Defendants jointly and severally, in the amount of no less than **two million seven hundred twenty-five thousand dollars ($2,725,000.00)** as well as reasonable attorney's fees, and such further relief as to this Honorable Court may deem just and proper under the law.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 29th day of August, 2020.

> **HERNANDEZ-OHARRIZ &
> SANTIAGO, P.S.C.**
> Centro Internacional de Mercadeo 1
> 100 Carr. 165, Suite 612
> Guaynabo, PR 00968
> Tel: (787) 378-5630
> Fax: (787) 775-1672
>
>
> By:     s/ Edgardo Hernández
>         **Edgardo José Hernández Ohárriz**
>         U.S.D.C. No. 229304
>         ehernandez@lawservicespr.com